Our first case for today is 2014-5146, Bannum v. United States. Mr. Huffman, please proceed. Good morning. May it please the Court. My name is Justin Huffman from the Camargo Law Firm in Auburn, New York. I represent Bannum, Inc., the appellants in this matter. To be clear here, what Bannum is challenging is the BOP's decision to eliminate Bannum from the competitive range, despite a reasonable request for an extension given the circumstances in this matter. Bannum's recitation of the history of this procurement simply highlights the BOP's history of bias against Bannum, especially in regards to this procurement. I'd like to point the Court to the Galen 2 case, which we cite in our brief. Did your client ever obtain the necessary zoning to have violent offenders present in this facility? During the initial procurement, they had, but what had occurred here was that I know you had to move, so did you ever obtain it? They did not because they were eliminated from the competitive range before they were given the opportunity to do so. They had the opportunity to do it, did they not? Well, they had asked for an extension in order to, due to the circumstances here, to obtain... The circumstances were that they applied late. Well, that's not entirely what occurred here. What occurred was that Bannum had obtained Bannum zoning on its originally proposed facility at last, and when the BOP issued its corrective action in reconsidering the proposals due to the passage of time there, Bannum's zoning had been removed from the existing zoning. So, it was required to go back... It got an extension of time to do that, right? They had requested an extension, were given... I thought there was like a stutter stop. There was a first attempt, and that didn't work out, and actually you filed a protest and went through a whole protest, and the agency says, no, we'll let you start all over again. Well, they had zoning originally. They had submitted it a couple of weeks late. Well, that's a little problem, isn't it? I mean, it says you're supposed to have proof of zoning, what, within 60 days before a certain date, and you didn't have it? And that's a matter of discretion for... Right, but I mean, time is time. It's not uncommon if there's a time you're supposed to have some prerequisite satisfied by a date certain and you don't, then you didn't qualify. Well, Your Honor, we had contended that because... This is not a world full of grace, government contracting, as you know. There are requirements. Well, Your Honor, that issue was a matter of discretion, and we contend that because... And you are at abuse of discretion? Yes, Your Honor. We have contended that because eliminating BANNM from the competitive range, and when the BOP... I would double back and say that at the time the BOP did so, they had... At the time the BOP even considered eliminating BANNM from the competitive range, they had already had BANNM zoning certificate in its hand. So by eliminating BANNM, they eliminated competition and created a... Was that at the new facility? No, this is still... That's the first time around, right? Right. And that, I would have thought all of the alleged, the supposed government mistakes in the first go around were wiped clean by the government's saying, okay, we'll start all over again. Well, the problem was... Why isn't that so? You were put out of contention and you came in and said, oh goodness, this isn't supposed to be a single source contract. It's supposed to be competitive. We've been knocked out and the government says, I guess you're right, we'll reopen. Why doesn't that cure any possible government mistakes before the reopening? Well, it was our... It's our contention that the BOP was aware that we would have... That BANNM would have a zoning problem at that time because at the time they had issued the corrective action, BANNM zoning on that facility would have lapsed. So it was... But that facility was going to be knocked out of play anyhow because school children were moving in the neighborhood and it would be improper to have released inmates in a facility near the children. Right. And at that time BANNM was not aware of that. Right. But as a matter of looking at the circumstances, I would have thought that the original facility is history. The minute that the school moves in, you clearly are not going to be able to get the government to agree to put a halfway house next to a school. Which, Your Honor, that is essentially what happened here because the issue was due to the passage of time. It could no longer use that original facility. But you want to obtain this contract, right? Yes, sir. And the obligation, one obligation for you to obtain this contract is to have proper zoning, right? Yes, sir. And you had an obligation to obtain proper zoning, did you not? Yes, Your Honor. Why did you delay in applying to the proper zoning board for the variance? Why didn't you do it as soon as it reopened? Well, BANNM was in the process of doing so, and which is what they had requested the extension in order to do. And they had found a new facility and entered into an agreement, a right to use agreement. But because the BOP only gave BANNM an extension of two weeks... Well, when you talk about they only gave them an extension of two weeks, but isn't it true that BANNM didn't seek any type of extension or a move until two full months after the corrective action was taken? Yes, Your Honor, but that... So you wait two months and you do nothing. Now, you know during that two months, even if you didn't know a school moved in, you know your zoning expired on December 1st of 2013. You know that because that was clear on the face of your sitting on expired zoning approval. At that point, you knew in order to be able to compete for this contract, you had to get re-approved. So even if you didn't know there was a school there and you wouldn't therefore be approved, why is it okay for you to sit back and do nothing for two months after the corrective action and now be heard to complain about the fact when you finally did something two months later, you asked for an extension and they only gave you two weeks and that's not fair because it's not long enough. Well, Your Honor, it wasn't that BANNM did nothing. They were in the process of negotiating other agreements. They were attempting to make arrangements with other individuals at that time. I understand that's not part of the BOP. Well, Your Honor, I believe BANNM was attempting, simply attempting to comply with the BOP requirements and even if the BOP or even if BANNM had been able to, the BOP was looking to shut BANNM down regardless because using a clause that they could not change their terms. So BANNM was in a situation where essentially they were damned if they do, damned if they don't, where if they had established zoning, they were going to be knocked out for untimely... That's purely speculative on your part, isn't it? No, Your Honor, that's right in the case. Any change to their proposed facility would be untimely. On the zoning issue, my recollection of the proceedings below was that you had a disparate treatment argument, which I don't believe you've made here. I thought your argument below was that the agency, your competitor here is a business unit that has a pre-existing facility that's performing the services and it had a previously approved zoning apparently or it had some type and I thought your argument below was that the government was cutting slack to your competitor on the zoning issue but not you and therefore there was disparate, unfair disparate treatment. But I didn't see that argument in your brief here. Well, Your Honor, that essentially some of the issues below may have gotten slightly conflated because essentially BANNM's recitation of the previous procurement was essentially simply to show how the passage of time during the first procurement and challenge of that procurement prejudiced BANNM because of the passage of time and the zoning issue and... Mr. Hoffman, your difficulty is the standard overview. I mean, I didn't mean by my questions to suggest that BANNM had done something wrong. But the problem is under an abuse of discretion standard, it's hard for me to conclude that when they had two months to act and they didn't move it or seek corrective action during that two months or seek extension after that, during that two-month period, how can I say it's an abuse of discretion for the district, for the lower tribunal to decide that two weeks was enough and then to boot them out of the process after that. Your problem is abuse of discretion. We don't get de novo review over that question. You sat and didn't act for two months and they only gave you two weeks. If they had only given you two weeks the day they issued the corrective action, this would be a really different case, even under an abuse of discretion standard. But under an abuse of discretion standard, your hurdle is that BANNM didn't do anything for two weeks to fix things. You see the problem I'm having. I believe so, Your Honor. The issue there is that the BOP's course of conduct throughout this procurement and quite very similar issues. Not to get too deep into those issues, but there have been two procurements very recently in which- None of that is relevant to this record, but let me make sure I understand your argument because you're into your rebuttal time and I want to make sure you have a chance. Your argument is that this record as a whole shows or demonstrates unfair treatment of BANNM in this process, even if they waited two months and maybe weren't as sure. Your argument is that they were unfairly treated. In essence, yes, Your Honor. Okay. Thank you. Let's hear from closing counsel. Mr. Werner, who's going first? Mr. Majeris. Okay, Mr. Majeris. Thank you. I believe you have 11 minutes. Yes, Your Honor. Yes. May it please the court. My name is Ryan Majeris and I represent the United States in this matter. This case is about timeliness and we ask that this court affirm the trial court's judgment that the agency was reasonable in excluding BANNM from the competitive range because of untimely zoning. What's critical in this case is the fact that they were late and that the they were late. You're talking about between the May 28th and June 11th dates. Is that the lateness? Because I thought that was sort of forgiven by the government. I didn't really think that you were here today arguing to me that that lateness justified kicking them out at this time. Correct, Your Honor. That's not relevant. Okay. Then why don't you get to whatever it is you think warranted kicking them out this time because it seems like the government already relinquished the other problem that BANNM may have had. Yes, Your Honor. And the court found that those issues were moot. So following the initial protest and the agency's decision to take corrective action, and I note that BANNM voluntarily agreed to that corrective action and agreed to dismiss their suit. Pursuant to that corrective action, what happened is that the agency allowed reconsidered BANNM's proposal submitted in June of 2013 along with its proof of zoning. As Your Honor's pointed out, that zoning expired in December, the beginning of December 2013. They were let back into the competition about a month and a half later, January 22nd, 2014. So they knew their zoning had expired and they had continued to pursue their efforts to obtain the contract, yet did nothing to obtain proper zoning. Yeah, but is your complaint that they should have been acting between December 1st, 2013 and January? During that time, the government had already kicked them out. So why? And they were protesting that. And so the record as established by the time of the protest would be the record upon which the government's proper action or improper action would be judged. So are you really faulting them for at a time when they've been kicked out of the contract, not during that time seeking to renew zoning or extend? I don't know what the right terminology is. Yes, Your Honor. Is that really your argument, that during that small window between December 1st and January whatever, they should have acted? Is that your argument? Yes, Your Honor, that is our position. I don't think that's critical to get to where we would like this court to go, because as Your Honor pointed out, they were let back into the competition in January 2014. They knew their zoning had expired and they did nothing. They didn't exhibit the necessary diligence. In fact, it was the agency that reached out to BANNM about a month and a half later on March 11th saying, you know, we have your current zoning. We told you that's what we were going to consider. It's deficient. And then on March 14th, they issued discussion notices saying, you know, your zoning is deficient. Provide valid proof of your zoning. And not only that, that your zoning doesn't exhibit that you can cover all offenders, both violent and nonviolent. Because of the school or is that the nature of the zoning that they have actually had that was effective up until December 1st? Well, so their initial proposal, which of course is not the time because that was the original. No, but I mean the zoning. I'm talking, the original zoning approval was for everything violent and nonviolent? No, their initial proposal was just to cover nonviolent and that was a problem. And so after the agency issued the discussion notice in the middle of March, they gave them two weeks to respond. BANNM then at that point, this is March 26th, so over two months after they had let them back into the competition and informed them of such, they requested an extension and requested additional time to, and I quote, negotiate a new lease or purchase a new property, affirm the zoning for the property, apply for a special exception, create new floor plans, performance layout, 120 day availability and site plans. And they also noted that they were negotiating for a new site location with seven different potential properties. So they didn't inform the agency that they were... But they requested an extension at that time? They had, yes. And what was the answer to the request? So this was the first notice that the agency had received that they were requesting a site change because their current zoning could not be used. And they note this in their response letter to BANNM. The solicitation clearly states, if you're going to do a site change, you have to do it within 60 days of your initial proposal. They're obviously long past that date. They're even past if you were to consider January 22nd, the day they were let back in. Which is probably what the reasonable thing to assume. Sure. And they're still late. They're still two days late. And that's, really, that's the reason we noted the initial timeline. Because this just exhibits a lack of diligence, not only in the piece of this case that was mooted with the corrective action, but following. Was an extension granted? An extension was granted. But the problem is that they were not... How long? For two weeks to respond. Up to two weeks. Yes. But the problem is that... That's pretty much an illusory extension, right? Well, I wouldn't... They're going to go find a new property. First, they got to go find one, right? That may take more than an hour. Certainly. And they got a good zoning for it if they want to have it in play. Yes. Right? Absolutely. And why I emphasize the language in BANNM... Because you're absolutely agreeing with Judge Clevenger that it was illusory or absolutely that it was the situation? It's not that it was illusory. It's that what they were asking to do would take months. And the agency has the discretion under the solicitation to find... You're proposing a site change. The solicitation clearly states that it will be considered... It's what you're saying that the agency looks back and sees the horizon here and they say this BANNM character can't get his act together. He couldn't get his act together in Act 1 of the play. We gave him Act 2. He can't get his act together in Act 2. Correct. And so we are going to use our discretion to give him a very short time period, which probably means he can't possibly satisfy it, and thereby we will be able to move on and eliminate him from the competitive rank. Well... If a reasonable person is looking at facts in that way, what's wrong with that view of the circumstances? Well, I think the critical point is that the solicitation says that if you're seeking a site change, that's an unsolicited proposal modification and may result in elimination. And the solicitation gives the agency discretion to eliminate from the competitive range if you're proposing a site change. I should add, in fairness to you, that part of what I should have said in the story also is that the government has an interest in resolving this housing issue promptly. Absolutely, yes. And they have in hand a facility that they've used before and are familiar with, and so long as the price is reasonable. And they can't wait forever. Exactly, exactly. Isn't it reasonable to infer that that's precisely why the government left itself with the discretion if you propose a site change to eliminate you, because you don't want to wait for all new zoning approval and everything else? Yes, Your Honor. And I emphasize the point about all the pieces that I would have to do to get their zoning in place with this new property, because that could take a very long period of time. The agency doesn't have to entertain that and doesn't have to agree to do that. This would be a very different case, potentially, wouldn't it, if in January, when the corrective action occurred, suddenly Bantam said, okay, well, our zoning expired December 30th first. It's going to take us 30 days to get an answer for reapplication, and the government said, we'll give you two weeks. Wouldn't that feel like maybe an abuse of discretion? That potentially would be a different case. That's not this case. That's not this case. And I know that this case, of course, is not in the record before the court, but opposing counsel referenced the other proceedings before this court. No, we don't. Hold on here. Okay, I won't speak. Anything further you feel like you need to add? No, Your Honor. Then why don't we let Mr. Majerus, oh, no, you're Majerus, Mr. Werner. You've got your name flipped on my thing. Thank you very much. Mr. Werner has his time. And so if you really get desperate and need extra, Mr. Majerus conceded a little of his, so you can go a little bit over. I hope I won't even use the four minutes, Your Honor. I'll try not to belabor anything. May it please the court, I'm Jim Werner. I represent the intervener, Alston Wilkes. What I really want to do is just to make certain, and maybe they all got answered as we went along, but Judge Wallach, you asked the question at the very first question of the argument, and the answer is the record does not reveal that Bannum ever provided proof that they had zoning where they could accept all of the offenders required by the solicitation. That's how it appeared to me. Judge Clevenger, you asked the question about the way this transpired sort of in its totality, and importantly, and I think, Judge Wallach, this went to one of your points, this was not just a question. Well, you're going to cover all of it. Yeah, I'm trying. So I don't belabor anything, but answer the question. You look really good in black and my hair. Go ahead, keep going. You also referenced while you were doing the totality of the certification, why it is your client never showed proof of zoning. My client did show proof of zoning. Proof of zoning? Absolutely. Piece of paper that was in the record, that didn't say you had zoning. Well, I think... You had occupancy. Am I supposed to presume that because you have occupancy, the city hasn't thrown you out for zoning violations? I think given that they were an operating facility and the BOP knew that and understood that they were the operating facility in that location, yes, that would be... The fact that you have a certificate of occupancy, let's assume they're running a drug business in there. I mean, the fact that you're occupying a facility is irrelevant to whether or not you're satisfying all the requirements of zoning and whatever, right? I don't think that would be true because they were operating an existing RRC. And they never produced, when the request for them to update their zoning, they never came in and said, we have this thing from the BZA, the Board of Zoning Approval, that says we have a piece of paper that shows we're zoning approved. That piece of paper, I didn't see in the record. They produced a new letter, and I don't have the exact site in my mind, in response to the discussion notice. They got a certificate, the city says you're occupying the property. The second letter, the one that they provided in response to the discussion notice, made specific reference to the fact that they were authorized to continue operation of the halfway house at that location, as I recall, Your Honor. And that would include zoning as well as other requirements? I believe so. And I certainly believe that would have been a reasonable conclusion. It was less than perfect, you know, zoning certificate, by way of proof. I suppose you could say that about a number of the things, Your Honor. And I guess back to the point, what you also could conclude is that in this case, the requirement of the solicitation was for these offerors not just to provide a proof of zoning, but to maintain it, including through the life of the contract. And I think that's the point that you were describing earlier, that when you look at this, you realize that Bantam, who felt offended by the treatment they received in the initial response, began a protest in the summer, took it first to the agency, took it to the GAO, didn't even file its protest to the Court of Claims until such time as it knew that its special exception had expired. It accepted, with a voluntary dismissal of that initial protest, the corrective action. Well, it was being tenacious in pursuing its legal remedies. And it should have been equally tenacious in maintaining its qualification under the solicitation. And it did not. It did nothing to do that, including, as Mr. Majeres pointed out, for well beyond 60 days after the clock had been reset. And so I think the facts are here that the only prejudice that Bantam suffered in respect to this process was the prejudice— I would agree, would you not, that a two-week extension in a circumstance where they don't even have a property to get zoning on is, I use the word illusory, I would say it's parsimonious. Well, first of all, all they requested was an extension to respond to the discussion notice. They never really requested an extension with respect to a new submittal. They requested and were granted a two-week extension to respond to the discussion notice, the discussion notice which had said to them, we noticed that your proof of zoning, late as it was originally, says that you cannot accept violent offenders and you must have begun your use on December the 1st. In response to that, they said, we're going to have to do all of this stuff, but they never requested an extension to do that. They were granted a two-week extension to respond to the discussion notice, which is what they requested. And so, again, I've taken longer than I expected, but I believe that when you look at the circumstances here, you must conclude there was no disparate treatment. There were disparate proposals, but there is nothing here that indicates that there was any abuse of discretion and certainly no violation of the terms of the solicitation or any of the regulations by the government. Thank you, Your Honor. Thank you, Mr. Werner. Mr. Hoffman, you have some rebuttal time. Judge Clevenger, I may have misconstrued your question earlier about disparate treatment. I would like to point to pages 14 and 15 of our brief where we did address that issue, where the BOP asked Salsa-Wilkes two months after it had already thrown Bantam out of the competitive range for current zoning documentation. And we believe that that shows disparate treatment right there. And I would like to point out that, again, Mr. Majerus acknowledged that a two-week extension was illusory. The BOP knew that it was completely impossible. No, he didn't. I asked him that question and he denied it. I believe that in such a circumstance, in order to obtain a new facility, apply for zoning, and get zoning in a span of two weeks, it's simply impossible. Whether the BOP acknowledges that it knew that... Was the two weeks to obtain zoning or was it to respond, as your opposing counsel said? I believe it was to... Well, tell me. Well, you know, so tell me. It was to address the issues in the discussion notice, which would include addressing the zoning issue and the property issue. The short is that your response, if it had been filed within two weeks, would have explained why two weeks wasn't enough time to get a new facility and get zoned. Which is exactly what Bannum ended up doing, which I believe that's at 1134 of the joint appendix, or 11334 in the joint appendix. Bannum advised that it had obtained a new facility and that it had already scheduled a zoning hearing. But at that time, the BOP eliminated Bannum from the competitive range. So there was no reason for Bannum to go forward at that time. I believe I'm out of time. Thank you. Thank you, Mr. Hoffman. We thank both counsel for their arguments. The case is submitted.